**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

CECIL BOYETT,

    Petitioner,

v.                                           No. CV 17-374 KG/CG

UNITED STATES OF AMERICA,

    Respondent.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

**THIS MATTER** is before the Court on Petitioner Cecil Boyett's *Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody* (the "Petition"), (Doc. 1), filed March 27, 2017; Respondents R.C. Smith and Hector Balderas' *Answer to Cecil Boyett's* pro se *Petition for Writ of Habeas Corpus (18 U.S.C. § 2254) [Doc. 1]* (the "Response"), (Doc. 11), filed June 30, 2017; the accompanying *Record Proper on Appeal* (the "Record), (Doc. 12), filed June 30, 2017; and Petitioner's *Reply to Respondent's Answer to Petitioner's 28 U.S.C. Section 2254 Petition* (the "Reply"), (Doc. 16), filed July 13, 2017. United States District Judge Kenneth J. Gonzales referred this case to Magistrate Judge Carmen E. Garza to perform legal analysis and recommend an ultimate disposition. (Doc. 5). Having considered the parties' filings and the relevant law, the Court **RECOMMENDS** that Petitioner be given fourteen (14) days to amend the Petition to include only claims that Petitioner has exhausted through available state remedies, as further explained below.

    **I.**     **Background**

This case arises from the shooting death of Deborah Roach. Although Petitioner disputes several details, the basic facts are that Petitioner shot Ms. Roach in the head,

killing her, in front of his house on the afternoon of February 5, 2004. On December 12, 2005, a jury found Petitioner guilty of first-degree willful and deliberate murder in violation of NMSA 1978, Section 30-2-1(A)(1) (1994). (Doc. 11-1 at 1-2). Petitioner was sentenced to life in prison with parole eligibility after thirty years, to be followed by five years of parole. *Id.* Petitioner appealed his conviction, arguing the trial court erred in denying certain jury instructions and denying Petitioner's motion for a new trial. (Doc. 11-1 at 22-23). The New Mexico Supreme Court affirmed on all grounds. (Doc. 11-2 at 1-21); *State v. Boyett*, 2008-NMSC-030, 144 N.M. 184, 185 P.3d 555. Petitioner then filed a petition for writ of habeas corpus with the state courts of New Mexico, claiming he was denied his right to effective assistance of counsel and to be present at every stage of the trial. (Doc. 11-2 at 23-39). Following an evidentiary hearing, (Docs. 11-3, 11-4), the state court found Petitioner was not denied either right. (Doc. 11-5 at 17-25). Specifically, the state court found Petitioner's trial counsel pursued a plausible, rational trial strategy, therefore Petitioner received effective assistance, and no juror was replaced outside Petitioner's presence, therefore he was present at all stages of trial. *Id.* at 24-25. Petitioner filed a petition for writ of certiorari with the New Mexico Supreme Court, (Doc. 11-5 at 27-37), which was denied, (Doc. 11-5 at 48). Petitioner subsequently filed the instant Petition.

In the Petition, Petitioner claims four grounds for relief: (1) ineffective assistance of counsel; (2) denial of his right to be present at all critical stages of trial; (3) denial of his right to due process; and (4) withholding of exculpatory evidence. (Doc. 1 at 5-10). The second and fourth grounds are straightforward. Regarding denial of his right to be present at all critical stages of trial, Petitioner alleges a juror was replaced with an

2

alternate outside of his presence. (Doc. 1 at 7). As for withholding exculpatory evidence, Petitioner contends the trial prosecutor withheld evidence, specifically a "safety contract" written by the victim in which she promised to tell someone if she became "suicidal or too depressed." (Doc. 1 at 10).

Petitioner's ineffective assistance claim contains several component claims of deficient performance and prejudice. First, Petitioner alleges his trial counsel was ineffective by failing to present expert testimony regarding head injuries he has suffered, which, he alleges, affected his ability to form specific intent to murder. (Doc. 1 at 5). Further, Petitioner claims his counsel failed to call an expert to rebut a computer-generated reenactment of the crime scene. *Id.* Finally, Petitioner argues DNA testing would have "clearly established" Petitioner and the victim's positions. *Id.* Regarding his right to due process under the Fourteenth Amendment, Petitioner alleges the trial court denied him due process by denying jury instructions on inability to form specific intent, defense of habitation, and self-defense. *Id.* at 8. Petitioner also alleges his right to call expert witnesses for rebuttal was violated. *Id.*

Respondents argue that the Petition fails, at least initially, because Petitioner has failed to exhaust available state court remedies as required by § 2254(b)(1)(A). First, Respondents contend that Petitioner failed to raise a number of arguments about why his counsel was ineffective in the underlying state proceedings; therefore, Petitioner failed to exhaust available state court remedies regarding those arguments. (Doc. 11 at 5-6). Respondents further argue Petitioner failed to exhaust his claims regarding exculpatory evidence and a jury instruction on self-defense. *Id.* at.7-8. Respondents admit Petitioner exhausted available remedies regarding one expert witness, two of the

3

jury instruction issues, and the allegedly replaced juror. *Id.* 6-7. Respondents do not object to dismissing the Petition without prejudice because it is mixed or allowing Petitioner to delete the unexhausted claims and proceed with the exhausted claims. *Id.* at 14-15. Finally, if Petitioner amends the Petition, Respondents request a "reasonable time" in which to amend the Response, presumably to argue the merits of the Petition. *Id.* at 14.

In his Reply, Petitioner argues the merits of the Petition and raises several new arguments. (Doc. 16 at 1-15). Regarding exhaustion, Petitioner denies that the Petition is "mixed" and asks that any of Respondents' claims regarding failure to exhaust be waived in the interests of justice. *Id.* at 17. Petitioner indicates he wishes to avoid another multi-year "battle" in New Mexico state courts. *Id.* at 22. Petitioner asks that if the Petition is found to be "mixed," the Court decide it on the merits. *Id.* at 23. Finally, Petitioner specifically asks that the Petition not be dismissed, and that he be allowed to dismiss only the unexhausted claims and proceed with exhausted claims. *Id.*

**II.    Analysis**

   a. *Governing Law and Standards of Review*

Under 28 U.S.C. § 2254, a person in state custody may petition a federal court for relief on the ground that he is in custody in violation of the United States Constitution or laws. § 2254(a). A petition under § 2254 may not be granted unless the state court judgment: (1) resulted in a decision contrary to or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court; or (2) resulted in a decision based on an unreasonable determination of the facts in light of the evidence presented. §§ 2254(d)(1)-2). Factual findings are presumed correct and the

petitioner has the burden of rebutting that presumption by clear and convincing evidence. § 2254(e)(1).

Further, a § 2254 petition may not be granted unless the petitioner has "exhausted remedies available in the courts of the State." § 2254(b)(1)(A). A petitioner has not exhausted available remedies "if he has the right under the law of the State to raise, by any available procedure, the question presented." § 2254(c). In order to exhaust a claim, the "federal claim must be fairly presented to the state courts." *Picard v. Connor*, 404 U.S. 270, 275 (1971); *see also Anderson v. Harless*, 459 U.S. 4 (1982). "Fair presentation" means "that the substance of the claim must be raised in state court." *Wilson v. Workman*, 577 F.3d 1284, 1294 (10th Cir. 2009), *abrogated on other grounds by Simpson v. State*, 230 P.3d 888 (Okla. Crim. App. 2010). Both the "allegations and supporting evidence must offer the state courts 'a fair opportunity to apply controlling legal principles to the facts bearing upon [a] constitutional claim.'" *Id*. (quoting *Anderson*, 459 U.S. at 6).

A petitioner need only present a claim once, either through direct appeal or collateral review. *See Brown v. Allen*, 344 U.S. 443, 447 (1953) (stating it "is not necessary . . . for the prisoner to ask the state for collateral relief, based on the same evidence and issues already decided by direct review."); *Dever v. Kan. State Penitentiary*, 288 F.3d 1231, 1235-36 (10th Cir. 2002) ("The exhaustion requirement is satisfied if the federal issue has been properly presented to the highest state court, either by direct review of the conviction or in a postconviction attack."). However, a petitioner must have exhausted all claims in the § 2554 motion. *Rose v. Lundy*, 455

U.S. 509, 513-22 (1982); *see Rhines v. Weber*, 544 U.S. 269, 274-276 (2005) (discussing how § 2254 "preserved *Lundy*'s total exhaustion requirement").

If a petitioner has not exhausted all claims in his § 2254 petition, the petition is "mixed" and the Court may: (1) dismiss the entire petition without prejudice; (2) stay the petition and hold it in abeyance while the petitioner exhausts the unexhausted claims; (3) allow the petitioner to dismiss the unexhausted claims and move forward only with the exhausted claims; or (4) ignore the exhaustion requirement and deny the petition on the merits if none of the claims are meritorious. *Fairchild v. Workman*, 579 F.3d 1134, 1156 (10th Cir. 2009) (quoting *Harris v. Lafler*, 553 F.3d 1028, 1031 (6th Cir. 2009)). If the Court denies the petition, it must do so entirely either with or without prejudice; the Court cannot dismiss some claims with prejudice and others without prejudice. *See Moore v. Schoeman*, 288 F.3d 1231, 1235 (10th Cir. 2002) (stating "individual, unexhausted claims may be denied, but only if the result allows the court to determine the entire petition on the merits"); *Hinzo v. Tapia*, 378 Fed. Appx. 857, 858-59 (10th Cir. 2010) (unpublished) (reversing district court that dismissed some claims with prejudice and others without prejudice).

   b.  <u>Whether Petitioner exhausted all of his claims</u>

As discussed, the parties disagree whether or not Petitioner has exhausted all the claims in his Petition. Petitioner makes several claims in the Petition, some with several subparts. Petitioner's four broad claims are that he was denied due process as a result of: (1) ineffective assistance of counsel; (2) replacement of a juror outside his presence; (3) the trial court's denial of certain jury instructions; and (4) the prosecutor's withholding or destruction of exculpatory evidence. (Doc. 1 at 5-15). First, Petitioner

6

claims his trial counsel was ineffective by failing to call expert witnesses, including an expert to testify regarding Petitioner's inability to form specific intent, a crime reconstruction expert, and a DNA expert witness. *Id.* at 5-7. Petitioner's second claim is that a juror was replaced outside his presence, that the trial prosecutor has lied about this, and the trial record erroneously does not reflect this. *Id.* at 7. Third, Petitioner alleges the trial court erred in denying jury instructions on inability to form specific intent, defense of habitation, and self-defense, and denied his right to call expert witnesses. *Id.* at 8. In his Reply, Petitioner expands on the last sub-claim, stating he was denied his right to compulsory process. (Doc. 16 at 7). Finally, Petitioner claims the victim signed a "safety contract" in which she agreed not to harm herself and to reach out to a friend if she felt suicidal. (Doc. 1 at 10). Petitioner claims this was exculpatory evidence the prosecution either withheld or destroyed. *Id.* at 10, 22-23.

Additionally, Petitioner makes several allegations in the Petition under the heading "Additional Supporting Facts." *Id.* at 15-33. In support of his claims, Petitioner contends that: the trial prosecutor intimidated his expert witness into not testifying, *id.* at 15-17; trial counsel guaranteed acquittal, causing Plaintiff to reject a plea agreement, *id.* at 18; trial counsel failed to adequately investigate alleged evidence tampering at the victim's residence, *id.* at 20; trial counsel failed to investigate or call an expert regarding burns on the victim's hands, *id.*; trial counsel ineffectively cross-examined witnesses and failed to present evidence of the victim's statements about Petitioner, *id.* at 21-22; the trial judge should have recused himself because of a personal and business relationship with trial counsel, *id.* at 25; Petitioner's counsel failed to introduce a signed, notarized statement by a witness that a juror was replaced, *id.* at 28-29; at trial, the

7

bailiff improperly influenced the jury by repeatedly interacting with the victim's family in court, *id.* at 29; and that the trial court improperly suppressed evidence related to the victim's termination from her law enforcement job for firing her service weapon at two unarmed suspects, *id.* at 33. Given the parties' disagreements, the Court will examine the state court records to determine what issues Petitioner has exhausted.

1. *Direct Appeal*

Petitioner pursued both a direct appeal and collateral review of his conviction. On direct appeal, Petitioner argued that the district court erred by denying certain jury instructions and denying Petitioner's motion for a new trial. (Doc. 11-1 at 22-45; Doc. 11-2 at 1-20); *State v. Boyett*, 2008-NMSC-030, 144 N.M. 184, 185 P.3d 355. Specifically, Petitioner argued the trial court erred by denying jury instructions on defense of habitation and inability to form specific intent. (Doc. 11-1 at 23); *Boyett*, 2008-NMSC-030, ¶ 9. On appeal, the New Mexico Supreme Court held that defense of habitation is a valid defense in New Mexico, but no evidence supported offering the instruction in Petitioner's case. *Id.* ¶¶ 14-25. Further, Petitioner was not entitled to an instruction on inability to form specific intent because, In Petitioner's case, such an instruction required expert opinion evidence and Petitioner offered none at trial. *Id.* ¶¶ 26-30.

Regarding Petitioner's motion for a new trial, Petitioner argued that the absence of expert testimony affected his ability to present his defense and resulted in prejudicial error requiring a new trial. *Id.* ¶ 32; *see* (Doc. 11-1 at 36-41; 80-91). The New Mexico Supreme Court distinguished Petitioner's case from others in which the trial court excluded expert testimony or denied a continuance to obtain expert testimony. *Id.* ¶ 32-

33; (Doc. 11-1 at 18-19). In Petitioner's case, Petitioner was on notice his expert witness might not testify, the expert witness did not appear at trial, and Petitioner did not move for a continuance or subpoena the witness. *Id.* ¶ 33-34; (Doc. 11-1 at 19). Finally, during a hearing on his motion for a new trial, Petitioner "merely speculated" that he could have found another expert witness; Petitioner did not submit a diagnosis, evaluation, or affidavit explaining his inability to form specific intent. *Id.* ¶ 35; (Doc. 11-1 at 19-20). Accordingly, the New Mexico Supreme Court was "left to speculate about any prejudice to [Petitioner] caused by his counsel's decision not to request a continuance." *Id.*

Given Petitioner's arguments and the New Mexico Supreme Court's decision, Petitioner "fairly presented" the issues of denial of jury instructions regarding inability to form specific intent and denial of jury instructions regarding defense of habitation to the New Mexico Supreme Court. Petitioner presented the substance of his arguments, such that the court had the opportunity to apply controlling legal precedent on these issues. Further, because he presented these issues on direct appeal, Petitioner was not required to repeat them when seeking collateral relief. Accordingly, Petitioner exhausted state remedies regarding these issues to the extent they are raised in the Petition.

2. <u>Collateral Relief</u>

On October 31, 2006, Petitioner filed a petition for writ of habeas corpus in state court. (Doc. 11-2 at 23). In the state petition, Petitioner raised two grounds for relief: that he was denied effective assistance of counsel and was denied his right to be present at every stage of his own trial. *Id.* Regarding ineffective assistance of counsel, Petitioner argued his trial counsel's failure to call an expert witness about Petitioner's traumatic

9

brain injury was not a tactical decision, but was gross negligence undermining Petitioner's right to present his defense. *Id.* at 24-25. Further, Petitioner claimed his trial counsel was ineffective by failing to: (1) conduct an adequate investigation and present evidence regarding the victim's aggression, violent conduct, and suicidal behavior; (2) call a blood spatter expert to rebut the state expert's testimony about Petitioner's and the victim's relative positions; (3) test physical evidence, which would have supported Petitioner's theory about his and the victim's relative positions; and (4) call a crime scene specialist to testify regarding the inadequacy of the police investigation and contamination of the crime scene. *Id.* at 27-28. As for his second argument, Petitioner claimed that after the jury was sworn and dismissed for lunch, an alternate juror replaced a seated juror. *Id.* at 29. Petitioner alleged this occurred outside his presence and therefore violated his federal constitutional right to be present at his own trial. *Id.* at 29-31.

At the hearing, Petitioner testified that at the end of trial, the jurors were sworn in, the jury was dismissed for lunch, and when they returned an alternate juror was in the jury box and an original juror was seated in the gallery. Susan McLean, Petitioner's prosecutor, testified that no such thing happened; the jurors were sworn in, sequestered, and returned to court to render their verdict. Ms. McLean testified the trial judge always polled the jurors by name and the allegedly replaced juror was polled, as shown in the trial record. (Doc. 11-4 at 42-47).

Regarding Petitioner's inability to form specific intent, Dr. Susan Cave testified on behalf of Petitioner. (Doc. 11-3 at 17). Dr. Cave stated that had she been called as an expert witness in Petitioner's trial, she would have testified that Petitioner could not form

10

specific intent. *Id.* at 31-32. On cross examination, Dr. Cave opined that given her review of Petitioner's records, it was "highly likely" that Petitioner's "ability to form specific intent was likely impaired." *Id.* at 37. Dr. Cave's ultimate opinion, "to a reasonable degree of certainty," is that Petitioner was not capable of forming specific intent to kill. *Id.* at 52.

Sheila Lewis, an attorney who represented Petitioner on appeal and whom the court qualified as an expert witness, testified that Petitioner's trial counsel's failure to secure an expert like Dr. Cave was not a tactical decision. (Doc. 11-4 at 7). Rather, given his proffered jury instructions, his statements as to his own intent, and the motion for a new trial, trial counsel ineffectively failed to follow through on presenting a defense, which prejudiced Petitioner. *Id.* at 12-13, 17-23. On questioning by the state court, Ms. Lewis agreed that a reasonable trial counsel could have decided to abandon the inability to form specific intent theory in favor of the self-defense theory, but she maintained that is not what Petitioner's trial counsel did in this case. *Id.* at 29-36.

Regarding blood spatter analysis, two expert witnesses testified: Lawrence Renner and Arthur Ortiz, who was the state's expert at Petitioner's trial. Mr. Renner testified that, given the blood spatter evidence, the victim was within two to three feet of the porch overhang in front of Petitioner's home. (Doc. 11-3 at 62-63). Mr. Renner reasoned that "back spatter," which is blood coming out of a bullet entrance wound, travels up to two to three feet maximum, and since there was blood on porch overhang, the victim must have been within two to three feet of the porch. *Id.* Mr. Renner stated that no blood stains were found on Petitioner's gun, but that could have resulted from stains rubbing off onto the couch cushion where the gun was found. *Id.* at 64. As for the

11

victim's gun, Mr. Renner stated her gun must have been out of her waistband and in a horizontal position when she was shot; however the physical evidence does not show when the victim drew her gun. *Id.* at 67-68. Finally, Mr. Renner opined that Petitioner's arm was likely totally extended when he pulled the trigger, rather than pointing up or down, based on the horizontal angle of the victim's head wound. *Id.* at 83-84. Mr. Renner stated that he and Mr. Ortiz did not disagree on much–just the distance back spatter may travel. *Id.* at 75-76, 77.

      Mr. Ortiz began his testimony by opining that, based on the lack of gun powder residue or singeing on the victim's clothes, her arm was not outstretched or close to Petitioner when she was shot. (Doc. 11-4 at 51-53). Mr. Ortiz also opined that several pieces of evidence, taken together, indicated Petitioner stepped out of the house before shooting the victim: that Petitioner was taller than the victim, that there was a six inch step up into the house from the porch, and that the victim's head wound was more or less horizontal. *Id.* at 60-61. Regarding back spatter, Mr. Ortiz stated he was trained that back spatter can travel up to four feet, rather than two or three as Mr. Renner testified. *Id.* at 62. Finally, Mr. Ortiz stated that, in his opinion, it was more likely the victim was not the aggressor because her car engine was running and a set of keys was found by her body. *Id.* at 65. To Mr. Ortiz, this showed the victim was more likely returning the set of keys instead of there threatening Petitioner. *Id.*

      The last witness to testify was former New Mexico Supreme Court Justice Paul Kennedy.[1] In response to testimony by Ms. Lewis, Mr. Kennedy testified regarding the

---

[1] The record does not include a transcript of Mr. Kennedy's testimony. The record indicates he was set to testify on April 15, but the hearing was continued to Monday, April 18. (Doc. 11-4 at 76). This description of Mr. Kennedy's testimony is taken from Petitioner's petition for writ of certiorari to the New Mexico Supreme Court. (Doc. 11-5 at 27-37).

12

inherent tension between defenses based on self-defense versus an inability to form specific intent. (Doc. 11-5 at 33). Mr. Kennedy explained it can be difficult to explain to jurors how one can have the inability to form specific intent while still intending to engage in self-defense. *Id.* In Mr. Kennedy's opinion, trial counsel's decision to abandon the incapacity defense was a reasonable trial tactic, and the self-defense theory was stronger than the incapacity theory. *Id.*

On June 30, 2016, the state court issued findings of fact and conclusions of law denying Petitioner's state petition. *Id.* at 17. Under "Findings of Fact," the state court wrote that although Petitioner raised several issues in his state petition, he only presented evidence on three of the raised issues: ineffective assistance for failure to present expert testimony regarding Petitioner's ability to form specific intent, ineffective assistance for failure to present a rebuttal blood spatter expert, and denial of Petitioner's right to be present at all stages of trial. (Doc. 11-5 at 18). First, the state court recounted the conflicting testimony between Petitioner and the original trial prosecutor regarding the allegedly replaced juror. *Id.* at 19. Regarding the blood spatter experts, the state court found that trial counsel's failure to call a blood spatter expert was a rational trial decision given the favorable testimony from Mr. Ortiz; therefore, Petitioner was not prejudiced by his trial counsel's failure to call his own blood spatter expert. *Id.* at 20. Similarly, the state court determined that a reasonably competent trial counsel could have chosen not to pursue the incapacity theory in order to avoid conflict with the self-defense theory, making that decision a legitimate trial tactic. *Id.* at 23.

Under "Conclusions of Law," the state court held that no juror was replaced outside of Petitioner's presence; trial counsel's failure to call a blood spatter expert was

13

neither ineffective nor prejudicial; and, similarly, trial counsel's failure to call a medical expert was neither ineffective nor prejudicial. *Id.* at 24-25. More specifically, the state court concluded that a claim that Petitioner did or could not form specific intent was not credible and that Petitioner's trial counsel could have determined that choosing not to pursue the incapacity defense was a better strategy. *Id.*

Given the facts and evidence presented to the state court, the Court finds Petitioner fairly presented his claims as to ineffective assistance of counsel related to expert witness testimony on his ability to form specific intent and rebuttal blood spatter testimony, as well as his claim that a juror was replaced outside his presence. Witnesses testified as to Petitioner's incapacity defense, blood spatter analysis, and whether or not a juror was replaced, giving the state court an opportunity to apply legal analysis to the facts underlying Petitioner's claims. The Court therefore finds Petitioner exhausted these claims.

### c. *Petitioner has not exhausted all claims in the Petition*

After comparing the state court record and the Petition, the Court must conclude that Petitioner has failed to completely exhaust all of the claims in the Petition. Although Petitioner previously alleged ineffective assistance of counsel due the absence of a rebuttal crime scene reconstruction expert and DNA testing, (Doc. 11-2 at 27-28), Petitioner did not factually develop these claims before the state court. No witnesses testified and no witness was presented at the state petition hearing regarding these issues. Although a rebuttal blood spatter expert testified, the Petition focuses on a DNA analyst and crime scene reconstruction expert. *See* (Doc. 1 at 8, 20-21). As discussed, exhaustion requires presenting both a legal claim and its supporting factual allegations.

*Wilson*, 577 F.3d at 1294. Consequently, Petitioner has not exhausted his claims regarding a crime scene reconstruction expert or DNA testing expert.

Further, some of Petitioner's claims have not been presented to state courts as required. *See id*. For instance, Petitioner alleges he was denied due process because the trial court denied a jury instruction regarding adequate provocation for self-defense. (Doc. 1 at 8, 32-33). However, Petitioner did not raise this argument on direct appeal or in collateral proceedings. Petitioner also did not raise his arguments regarding the prosecution's alleged withholding or destruction of exculpatory evidence, his trial counsel "guaranteeing" acquittal, denial of compulsory process, or any of the other arguments or allegations Petitioner raises under the "Additional Supporting Facts" heading in the Petition. *Id.* at 15-33. The Court therefore finds that Petitioner has not exhausted all the claims he raises in the Petition.

### d. *Which of the four options the Court should pursue*

To summarize, the Court finds Petitioner has exhausted the following claims: (1) ineffective assistance of counsel regarding failure to call an expert witness to testify on Petitioner's inability to form specific intent; (2) denial of Petitioner's right to be present at all stages of trial; (3) the trial court's denial of a jury instruction regarding inability to form specific intent; and (4) the trial court's denial of a jury instruction regarding defense of habitation. The Court finds Petitioner has failed to exhaust any other claim in his Petition, including ineffective assistance of counsel for failure to call a rebuttal crime scene reconstruction expert or conduct DNA testing, the trial court's refusal to give a jury instruction regarding sufficient provocation and self-defense, the state prosecutor's destruction or withholding exculpatory evidence, or any additional allegation contained

15

in the "Additional Supporting Facts" section of the Petition. The Petition is therefore "mixed," in that it contains both exhausted and unexhausted claims.

As discussed earlier, the Court has four options when deciding a mixed petition: (1) dismiss the entire petition without prejudice; (2) stay the petition and hold it in abeyance while the petitioner exhausts the unexhausted claims; (3) allow the petitioner to dismiss the unexhausted claims and move forward only with the exhausted claims; or (4) ignore the exhaustion requirement and deny the petition on the merits if none of the claims are meritorious. *Fairchild*, 579 F.3d at 1156. The Court may not dismiss unexhausted claims without prejudice and deny exhausted claims on the merits. *Wood v. McCollum*, 833 F3d. 1272, 1274 (10th Cir. 2016).

In his Reply, Petitioner asks that the Court either decide the Petition on the merits or allow him to delete the unexhausted claims. (Doc. 16 at 23). Petitioner states he wishes to avoid another multi-year process in the state courts. *Id.* at 22. Although Petitioner requests the Court overlook any exhaustion-related deficiency and decide the Petition on the merits, the Court may only deny the Petition on the merits; the Court may not grant a mixed Petition. § 2254(a)(2) ("An application for a writ habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."). Further, if Petitioner deletes his unexhausted claims, they will be deemed abandoned, and any subsequent petition that raises those claims will be considered a second or successive petition under 18 U.S.C. § 2244(b)(2). *See Tapia v. Lamaster*, 172 F.3d 1193, 1195-96 (10th Cir. 1999). Respondents do not oppose giving Petitioner the option of dismissing the Petition

without prejudice so he may fully exhaust his claims or deleting the unexhausted claims and proceeding with the exhausted claims only. (Doc. 11 at 13-14).

Given the law and the parties' expressed positions, the Court recommends giving Petitioner an opportunity to voluntarily dismiss the unexhausted claims currently in the Petition or file an amended Petition containing only exhausted claims. If Petitioner does not amend his Petition or delete the unexhausted claims, the Court recommends dismissing the Petition without prejudice.

### III. Conclusion

For the foregoing reasons, the Court finds that the Petition is mixed, as it contains both exhausted and unexhausted claims. The Court recommends giving Petitioner an opportunity to file an amended petition or voluntarily dismiss his unexhausted claims.

> **THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

_____
THE HONORABLE CARMEN E. GARZA
UNITED STATES MAGISTRATE JUDGE