## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

CECIL BOYETT,

          Petitioner,

                                         No. CV 17-374 KG/CG

v.

R.C. SMITH, et al.,

          Respondents.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

    **THIS MATTER** is before the Court on Petitioner Cecil Boyett's *Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody* (the "Petition"), (Doc. 1), filed March 27, 2017; Respondents R.C. Smith and Hector Balderas' *Amended Answer to Cecil Boyett's* Pro Se *Petition for Writ of Habeas Corpus (28 U.S.C. § 2254) [Doc. 1]* (the "Amended Answer"), (Doc. 22), filed November 20, 2017; the accompanying *Record Proper on Appeal* (the "Record), (Doc. 12), filed June 30, 2017; and Petitioner's *Reply to Respondent's Amended Answer to Cecil Boyett's Pro Se Petition for Writ of Habeas Corpus (28 U.S.C. Section 2254)* (the "Reply"), (Doc. 23), filed December 4, 2017. Also before the Court are Petitioner's *Motion for Order of Release from Custody; Second Request for Appointment of Counsel* (the "Motion for Release"), (Doc. 19), filed October 20, 2017; and Respondent's *Response in Opposition to Cecil Boyett's* Motion for Order of Release from Custody; Second Request for Appointment for Counsel *[Doc. 19]* (the "Opposition to Release"), (Doc. 20), filed October 25, 2017. United States District Judge Kenneth J. Gonzales referred this case to Chief Magistrate Judge Carmen E. Garza to perform legal analysis and recommend an ultimate disposition. (Doc. 5). Having considered the parties' filings and the relevant

law, the Court **RECOMMENDS** that Petitioner's Petition be **DENIED**, that the Motion for Release be **DENIED**, and that this case be **DISMISSED WITH PREJUDICE**.

## I.    Background

This case arises from Petitioner's trial and conviction related to the shooting death of Deborah Roach. On February 5, 2004, Petitioner shot Ms. Roach in the head, killing her, in front of his house. At trial, Petitioner pursued two theories in his defense: first, that he was completely innocent because he shot Ms. Roach in self-defense, defense of his home, and defense of his fiancée; and second, that he was innocent of first-degree murder because he was incapable of forming the specific intent required for first-degree murder. (Doc. 11-2 at 4-5). In support of these theories, Petitioner testified that he knew Ms. Roach regularly carried a gun, that he saw her draw her gun, and that he shot her before she could shoot him. *Id.* Petitioner also testified that he suffered serious brain injuries years earlier, and he theorized these injuries made him incapable of forming the requisite intent to murder Ms. Roach. *Id.* at 13-14. Petitioner also listed an expert witness he expected to testify in support of his incapacity theory. *Id.* at 4-5; *see* (Doc. 22-1 at 2). However, the night before her scheduled testimony, the expert witness informed Petitioner's counsel she would not testify on Petitioner's behalf after she read reports and other documents the prosecution provided her. (Doc. 22-1 at 2). Petitioner did not call any other experts or request a continuance to do so.

Still, Petitioner requested jury instructions on both of his theories. The trial court instructed the jury on self-defense and defense of another, but did not instruct on defense of habitation or inability to form specific intent. (Doc. 12-2 at 33-34). First, the trial court declined an instruction on defense of habitation because there was no

evidence Petitioner shot Ms. Roach inside his home. (Doc. 11-2 at 5). Second, the trial court rejected Petitioner's requested instruction on inability to form specific intent because it required expert testimony and none had been provided. *Id.*

Ultimately, the jury found Petitioner guilty of first-degree willful and deliberate murder in violation of NMSA 1978, Section 30-2-1(A)(1) (1994). (Doc. 11-1 at 1-2). Petitioner was sentenced to life in prison with parole eligibility after thirty years, to be followed by five years of parole. *Id.* Petitioner filed a motion for a new trial, arguing in part that he was prejudiced by the lack of expert testimony on his ability to form specific intent. (Doc. 22-1 at 2, 11-13). The trial court denied the motion and imposed the mandatory life-sentence. *Id.* at 25-26.

Petitioner appealed his conviction, arguing the trial court erred in part by denying Petitioner's requested jury instructions. (Doc. 11-1 at 22-23). The New Mexico Supreme Court affirmed on all grounds. (Doc. 11-2 at 1-21); *State v. Boyett*, 2008-NMSC-030, 144 N.M. 184, 185 P.3d 555. First, the court affirmed the denial of an instruction on defense of habitation. The court reasoned that, in New Mexico, defense of habitation requires evidence that the commission of a felony inside the home was imminent and deadly force was necessary to prevent the commission of the felony. *Boyett*, 2008-NMSC-030, ¶ 15. Such evidence was absent in Petitioner's case. *Id.*, ¶ 25. Second, the court agreed with the trial court that expert testimony was necessary to link Petitioner's brain injury and his alleged inability to form specific intent. *Id.*, ¶ 29. The trial court therefore appropriately denied the instruction. *Id.*

Petitioner then filed a petition for writ of habeas corpus in state court, claiming in part that he was denied his rights to effective assistance of counsel and to be present at

every stage of the trial. (Doc. 11-2 at 23-39). Pertinent to this case, Petitioner claimed

his trial counsel was ineffective by failing to ask for a continuance or secure a different

expert witness when his original expert dropped out. (Doc. 1 at 5). Petitioner also

claimed that he was denied his right to be present at all critical stages of trial because a

juror named April Perea was replaced with an alternate outside his presence. *Id.* at 7.

On April 13, 15, and 18, 2016, the Thirteenth Judicial District Court of New

Mexico held evidentiary hearings on Petitioner's state habeas corpus petition and heard

testimony from several witnesses. First, Petitioner testified that at the end of trial, the

jurors were sworn in, the jury was dismissed for lunch, and when they returned an

alternate juror was in the jury box and April Perea was seated in the gallery. (Doc. 11-3

at 14-17). Susan McLean, the prosecutor who tried Petitioner, testified Petitioner was

mistaken; the jurors were sworn in, sequestered, and returned to court to render their

verdict, and no juror was replaced. Ms. McLean testified the trial judge always polled the

jurors by name, and April Perea was polled by name, as shown in the trial record. (Doc.

11-4 at 42-47).

Regarding Petitioner's inability to form specific intent, Dr. Susan Cave testified on

Petitioner's behalf. (Doc. 11-3 at 17). Dr. Cave stated that if she had been called as an

expert witness in Petitioner's trial, she would have testified that Petitioner could not form

specific intent due to a combination of factors, including Petitioner's brain injuries and

his admitted drug and alcohol use. *Id.* at 31-32. On cross examination, Dr. Cave opined

that it was "highly likely" that Petitioner's "ability to form specific intent was likely

impaired." *Id.* at 37. Dr. Cave's ultimate opinion, "to a reasonable degree of certainty," is

that Petitioner was not capable of forming specific intent to kill. *Id.* at 52.

Next, Sheila Lewis, an attorney who represented Petitioner on appeal and whom the court qualified as an expert witness, testified that Petitioner's trial counsel's failure to secure an expert like Dr. Cave was not a tactical decision. (Doc. 11-4 at 7). Rather, given his proffered jury instructions, his statements as to his own intent, and the motion for a new trial, trial counsel ineffectively failed to follow through on presenting a defense, which prejudiced Petitioner. *Id.* at 12-13, 17-23. On questioning by the state court, Ms. Lewis agreed that a reasonable trial attorney could have decided to abandon the incapacity theory in favor of the self-defense theory, but she maintained that is not what Petitioner's trial counsel did in this case. *Id.* at 29-36.

Finally, Paul Kennedy testified as an expert witness in criminal defense litigation. (Doc. 22-1 at 31-71). In response to Ms. Lewis' testimony, Mr. Kennedy discussed the inherent tension between defenses based on self-defense and an inability to form specific intent. *Id.* at 43-46. Mr. Kennedy stated it can be difficult to explain to jurors how one can have the inability to form specific intent while still intending to engage in self-defense. *Id.*; *see id.* at 65. In Mr. Kennedy's opinion, Petitioner's trial counsel's decision to abandon the incapacity defense was a reasonable trial tactic. *Id.* at 48. Further, Mr. Kennedy believed the self-defense theory was stronger than the incapacity theory. *Id.* at 41-47.

Following the evidentiary hearings, the state court found Petitioner was not entitled to relief. (Doc. 11-5 at 17-25). Specifically, the state court found Petitioner's trial counsel pursued a plausible, rational trial strategy, therefore Petitioner received effective assistance, and no juror was replaced outside Petitioner's presence, therefore he was present at all stages of trial. *Id.* at 24-25. Petitioner filed a petition for writ of

certiorari with the New Mexico Supreme Court, (Doc. 11-5 at 27-37), which was denied, (Doc. 11-5 at 48). Petitioner subsequently filed the instant Petition.

The Petition contains four claims that have been exhausted and may be evaluated on their merits: (1) ineffective assistance of counsel due to trial counsel's failure to secure an expert witness on Petitioner's brain injuries; (2) denial of his right to be present at all stages of trial; (3) denial of due process arising from the denial of the defense of habitation jury instruction; and (4) denial of due process arising from the denial of the inability to form specific intent jury instruction. (Doc. 1 at 5-8). The Petition contained numerous unexhausted claims that Petitioner agreed to dismiss. (Doc. 18).

Respondents argue Petitioner is not entitled to relief on any of his exhausted claims. First, Respondents contend the state court correctly applied the law regarding ineffective assistance of counsel and did not make unreasonable factual findings. (Doc. 22 at 11-15). Regarding Petitioner's claim that a juror was replaced outside his presence, Respondent states Petitioner has provided no evidence establishing that occurred; in fact, the trial transcript shows otherwise. *Id.* at 15. Finally, Respondents argue the denial of Petitioner's requested jury instructions did not amount to a denial of due process. *Id.* at 16-18.

In his Reply, Petitioner maintains that his trial counsel was ineffective by failing to secure an alternate expert witness and that his trial was unfair because the trial court did not grant his requested instructions. (Doc. 23 at 2). Further, Petitioner reiterates his claim that April Perea was replaced outside his presence. Petitioner claims Ms. McLean lied at the evidentiary hearing and that the record of Ms. Perea being polled by name is incorrect. *Id.* at 10. Petitioner cites Mr. Kennedy's testimony that Petitioner's trial

6

counsel was "quite possibly" "very negligent," (Doc. 22-1 at 70), and he requests an

evidentiary hearing to prove his claim of ineffective assistance. *Id.* at 16.

In addition to his Petition, Petitioner filed a Motion for Release, asking to either

be released from state custody or appointed an attorney so he may factually and legally

develop the claims in his Petition. (Doc. 19 at 1-8). Petitioner denies he is a danger to

the community and states he would agree to conditions of release. *Id.* at 7.

Respondents argue Petitioner has no freestanding right to counsel or a law library, and

remind the Court it has already denied Petitioner counsel because he has adequately

and intelligently pursued relief so far. (Doc. 20 at 1-2). Additionally, Respondents "take

exception" to Petitioner's claim that he is not a danger to the community, given he has

been convicted of first-degree willful, deliberate murder. *Id.*

## II.      Analysis

### a. *Governing Law and Standards of Review*

Under 28 U.S.C. § 2254, a person in state custody may petition a federal court

for relief on the ground that his detention violates the United States' Constitution or

laws. § 2254(a). A petition under § 2254 may not be granted unless the state court

judgment: (1) resulted in a decision contrary to or involved an unreasonable application

of clearly established federal law as determined by the Supreme Court of the United

States; or (2) resulted in a decision based on an unreasonable determination of the

facts in light of the evidence presented. §§ 2254(d)(1)-(2). Federal courts must presume

factual findings are correct, and a petitioner must present clear and convincing evidence

to rebut that presumption. § 2254(e)(1).

A state court decision is "contrary to" clearly established law if it: (1) "applies a rule that contradicts the governing law set forth" in Supreme Court cases, or; (2) if it "confronts a set of facts that are materially indistinguishable" from a Supreme Court decision and "nevertheless arrives at a result different from" the Supreme Court decision. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). Similarly, a state court decision constitutes an "unreasonable application" of federal law when a state "unreasonably applies" Supreme Court precedent "to the facts of a prisoner's case." *Id.* at 409. The state court decision must be more than incorrect or erroneous. *Renico v. Lett*, 559 U.S. 766, 773 (2010) (citation and quotation omitted). "Rather, the application must be 'objectively unreasonable.'" *Id.* (quoting *Williams*, 529 U.S. at 409). This imposes a "highly deferential standard of review," and state court decisions must be given the benefit of the doubt. *Id.* (citation and quotation omitted).

The Court must be "doubly deferential" to a state court's decision when a petitioner claims ineffective assistance of counsel and a state court has decided the claim against the petitioner on the merits. *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). The Court must defer to the state court's determination that counsel's performance was not deficient and to counsel's decisions on how to represent the client. *See Crawley v. Dinwiddie*, 584 F.3d 916, 922 (10th Cir. 2009). In applying these standards, the question before the Court is whether a state court's decision was unreasonable, not simply incorrect. *Knowles*, 556 U.S. at 123.

b. <u>Whether Petitioner is entitled to relief under § 2254</u>

As discussed, Petitioner claims four grounds for relief: (1) ineffective assistance of counsel due to trial counsel's failure to call an expert witness to testify regarding

Petitioner's brain injury; (2) denial of his right to be present at each state of trial; (3)

denial of due process due to denial of a defense of habitation jury instruction; and (4)

denial of due process due to denial of an inability to form specific intent jury instruction.

Respondents deny Petitioner is entitled to relief on any of these claims. The Court will

address each in turn, discussing the parties' arguments, the state courts' findings and

holdings, clearly established federal law, and whether Petitioner is entitled to relief.

     1.   *Ineffective Assistance of Counsel*

First, Petitioner contends his trial counsel rendered ineffective assistance by

failing to secure an alternate expert witness when Petitioner's expected expert witness

refused to testify. (Doc. 1 at 5; 15). Further, Petitioner claims the state court erred by

ignoring Dr. Cave's testimony in denying Petitioner's state habeas petition. *Id.*

Respondents assert that the state court's decision comported with and was not contrary

to clearly established federal law. (Doc. 22 at 11-15).

In *Strickland v. Washington*, the Supreme Court announced that "the proper

standard for attorney performance is that of reasonably effective assistance." 466 U.S.

668, 687 (1984). When a convicted defendant claims ineffective assistance, the

defendant must first "show that counsel's representation fell below an objective

standard of reasonableness." *Id.* at 688. Put differently, counsel's representation must

have been "reasonable considering all the circumstances." *Id.*

In applying the objective standard of reasonableness to counsel's performance, a

court gives considerable deference to an attorney's strategic decisions and the attorney

"is strongly presumed to have rendered adequate assistance and made all significant

decisions in the exercise of professional judgment." *Bullock v. Carver*, 297 F.3d 1036,

1044 (10th Cir. 2002) (quoting *Strickland*, 466 U.S. at 690). "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonably precise to the extent that reasonable professional judgments support the limitations on investigation." *Strickland*, 466 U.S. at 691.

In addition to ineffective assistance, the defendant must show that "deficiencies in counsel's performance" were "prejudicial to the defense." *Id.* at 692. Here, '[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. Rather, the "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

In this case, the state court heard testimony from two attorneys. First, Ms. Lewis testified that Petitioner's trial counsel was ineffective by not asking for a continuance or otherwise obtaining another expert when Petitioner's first expert did not testify. (Doc. 11-4 at 2-3; 7). Ms. Lewis believed Petitioner's trial counsel clearly intended to call an expert witness and offer expert testimony, but failed to follow through on that intention. *Id.* at 17. On its own questioning, the state court asked Ms. Lewis whether a reasonable attorney could have thought Petitioner had a better chance of successfully arguing self-defense without arguing inability to form specific intent. *Id.* at 15. Ms. Lewis responded: "That is a legitimate tactical decision that [Petitioner's] attorney did not make." *Id.*

The state court also heard Mr. Kennedy's opinions favoring the self-defense argument. Mr. Kennedy testified that juries are "suspicious" of a defendant's inability to

form specific intent, especially where, as here, the inability results at least in part from drug and alcohol use. (Doc. 22-1 at 38, 43-44). Mr. Kennedy felt that Petitioner had "a lot to work with" on self-defense and that self-defense was the stronger argument. *Id.* at 44-45. Finally, Mr. Kennedy opined that Petitioner's trial counsel's actions were within the range of what a reasonably competent defense attorney would do. *Id.* at 48.

Ultimately, the state court concluded a reasonably competent trial counsel could have chosen to abandon the incapacity argument in favor of the self-defense argument. (Doc. 11-5 at 23). The state court found that, in light of all the circumstances, the available evidence better supported self-defense, and presenting both theories could have confused the jury and undermined counsel's credibility. *Id.* Further, it was reasonable to emphasize self-defense because it would have resulted in acquittal, while the incapacity defense would have only reduced Petitioner's conviction to second degree murder. *Id.* Accordingly, Petitioner's trial counsel provided reasonably effective assistance. *Id.* at 24.

The state court also found that Petitioner was not prejudiced by his trial counsel's performance. *Id.* at 24-25. First, the state court stressed Dr. Cave's testimony that Petitioner's ability to form specific intent was only "likely" impaired and that Petitioner took other actions requiring specific intent. *Id.* at 22. The court determined that, overall, Dr. Cave's testimony would not have supported an incapacity instruction because of Petitioner's other actions. *Id.* It was not reasonably probable, then, that the outcome of the trial would have been different if Petitioner had called an expert witness. *Id.* at 24.

On review, the Court agrees with the state court's analysis. As Mr. Kennedy explained, pursuing a self-defense theory instead of an incapacity theory is a

11

reasonable trial tactic because it can be difficult to explain to jurors how one can have the inability to form specific intent and still intentionally engage in self-defense. (Doc. 22-1 at 43-46, 65). While Ms. Lewis testified she thought Petitioner's trial counsel's failure to secure an expert on Petitioner's brain injuries was not a tactical decision, the Court must evaluate "the objective reasonableness of counsel's performance, not counsel's subjective state of mind." *Harrington v. Richter*, 562 U.S. 86, 110 (2011). Importantly, Ms. Lewis also testified that a reasonable trial attorney could have decided to abandon the incapacity theory in favor of the self-defense theory. (Doc. 11-4 at 7, 12-13, 17-23, 29-36). Further, the record supports a finding that Petitioner's counsel's decision not to pursue an incapacity theory was a tactical decision because, if successful, the incapacity theory could only have resulted in a second-degree murder conviction, while a self-defense theory could have resulted in acquittal. For these reasons, the Court finds that Petitioner's counsel's failure to call an expert witness to testify regarding Petitioner's brain injury did not fall below an objective standard of reasonableness and, therefore, Petitioner does not meet the first *Strickland* prong.

Having found that Petitioner did not satisfy the first *Strickland* prong, the Court does not need to reach the second prong. *See United States v. Taylor*, 492 Fed. Appx. 941, 945 (10th Cir. 2012) (unpublished). Nevertheless, the Court finds that Petitioner has failed to show there is a reasonable probability that, but for his counsel's alleged errors, the result of the proceeding would have been different. Here again, as Mr. Kennedy explained, presenting both the self-defense and incapacity theories to the jury risked confusing the jury and losing credibility by presenting conflicting evidence. (Doc. 22-1 at 43-46). Mr. Kennedy further testified that the self-defense theory was stronger

12

than the incapacity theory and juries are skeptical of incapacity arguments. *Id.* at 41-47.

Additionally, the state court found that a jury instruction on lack of intent may not have

been presented to the jury because evidence showed that Petitioner engaged in other

activities that required an ability to form specific intent at the time of the shooting. (Doc.

11-5 at 6) (citing Doc. 11-3 at 41-44). The record, therefore, shows it is not reasonably

probable that the outcome of the trial would have been different if counsel had called an

expert witness and argued the incapacity theory.

Based on the foregoing, the Court finds that the state court's decision was not

contrary to or an unreasonable application of clearly established federal law, and was

not based on an unreasonable determination of the facts. §§ 2254(d)(1)-(2). The state

court followed the *Strickland* standard, and the Court does not disagree with its

conclusions. The Court therefore finds that Petitioner is not entitled to relief on his claim

of ineffective assistance of counsel.

2. *Right to be Present at Every Stage of Trial*

Petitioner's second claim is that he was denied his right to be present at all

stages of his trial. (Doc. 1 at 7). In particular, Petitioner claims a juror named April Perea

was replaced with an alternate outside his presence. *Id.* at 27-29. Respondent answers

that Ms. Perea was not replaced and that Petitioner has not provided clear and

convincing evidence that she was. (Doc. 22 at 15).

"One of the most basic of the rights guaranteed by the Confrontation Clause is

the accused's right to be present in the courtroom at every stage of his trial." *Illinois v.*

*Allen*, 397 U.S. 337, 338 (1970). In the state habeas proceedings, the court heard

Petitioner's testimony that he noticed Ms. Perea had been replaced by an alternate

13

following the jury's excusal for deliberations. (Doc. 11-3 at 13-15). Petitioner claimed

that the jury was instructed and excused for lunch, and that when the jury returned to

render a verdict, Ms. Perea was seated in the gallery and a male alternate had taken

her place. *Id.* at 14-15. Petitioner therefore argued he was denied his right to be present

at every stage of his trial because he was not present when Ms. Perea was excused

and replaced.

The state court also heard testimony from Petitioner's prosecutor, Susan

McLean. Ms. McLean testified that Ms. Perea was never excused, but that a female

alternate was. (Doc. 11-4 at 43-44). Ms. McLean stated the trial judge always polled

jurors by name, that he did so in Petitioner's trial, and that the trial record reflects that

Ms. Perea was polled. *Id.* at 44. The trial transcript shows that the trial judge polled the

jury by name, and that when the trial judge called "April Perea," the juror answered

"Guilty." (Doc. 22-1 at 30-31).

In its decision, the state court recounted Petitioner's testimony, Ms. McLean's

testimony, and the fact that the record showed Ms. Perea was polled. (Doc. 11-5 at 19).

In light of this evidence, the state court concluded no juror was replaced outside

Petitioner's presence. *Id.* at 24. Petitioner was therefore not denied his right to be

present at all stages of trial. *Id.*

On review, the Court finds the state court's factual finding was not unreasonable

in light of the evidence presented. Although Petitioner maintains that a juror was

replaced, Petitioner's testimony was contradicted by Ms. McLean and the trial transcript

itself. The state court's factual findings are presumed correct, and Petitioner must

produce clear and convincing evidence to rebut that presumption. § 2254(e)(1).

Petitioner alleges Ms. McLean perjured herself and that the trial transcript is incorrect, (Doc. 23 at 10), but Petitioner has not provided any evidence supporting these allegations. Accordingly, the Court finds Petitioner is not entitled to relief on his claim that he was denied his right to be present at all stages of trial.

### 3. *Denial of Due Process due to Denial of Jury Instructions*

Petitioner's last claims are that he was denied due process when the trial court denied his requested jury instructions regarding defense of habitation and inability to form specific intent. (Doc. 1 at 8). Respondents assert that, in order to obtain relief, the denial of the instructions must have rendered the entire trial fundamentally unfair, and Petitioner cannot meet that burden. (Doc. 22 at 16-19). Petitioner replies that his trial was unfair, given the jury did not hear expert testimony that would have necessitated the instructions. (Doc. 23 at 17-18).

Generally, a defendant is entitled to a jury instruction "as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find" in the defendant's favor. *Mathews v. United States*, 485 U.S. 58, 63 (1988) (citing *Stevenson v. United States*, 162 U.S. 313 (1896)). However, when a defendant asserts instructional error on collateral review, "[t]he question in such a collateral proceeding is 'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.'" *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977) (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)). A defendant's burden is "especially heavy" when the alleged error is not that the trial gave an incorrect instruction, but that the trial court erred by not giving an instruction, because "[a]n omission, or an incomplete instruction, is less likely to be prejudicial than a

misstatement of law." *Id.* at 155. The significance of an instructions' omission "may be evaluated by comparison with the instructions that were given." *Id.* at 156.

At the conclusion of his trial, Petitioner requested instructions on self-defense, defense of another, defense of habitation, and inability to form specific intent. Although the trial court instructed the jury on self-defense and defense of another, (Doc. 12-2 at 33-34), the trial court denied Petitioner's requested instructions on defense of habitation and inability to form specific intent because there was insufficient evidence presented to support those instructions. *See Boyett*, 2009-NMSC-030, ¶¶ 14, 26. Importantly, the trial court instructed the jury on lesser-included offenses that do not contain a specific intent element. (Doc. 12-2 at 30-32, 44).

On Petitioner's direct appeal, the Supreme Court of New Mexico affirmed the trial court's denial of Petitioner's requested instructions. First, the court recognized that, under New Mexico law, "[a] defendant is entitled to an instruction on his or her theory of the case if evidence has been presented that is 'sufficient to allow reasonable minds to differ as to all elements of the offense.'" *Boyett*, 2008-NMSC-030, ¶ 12 (quoting *State v. Gonzales*, 2007-NMSC-059, ¶ 19, 143 N.M. 25, 172 P.3d 162). The court then held that Petitioner would have been entitled to a defense of habitation instruction "if some evidence reasonably tended to show that" Petitioner killed the victim "to prevent her from forcing entry into his home and committing a violent felony once inside." *Id.*, ¶ 22. In Petitioner's case, the evidence showed that the victim had retreated from Petitioner's front door before she was shot and that there was no evidence the victim was attempting to enter Petitioner's home. *Id.*, ¶ 23. Accordingly, Petitioner was not entitled to an instruction on defense of habitation. *Id.*, ¶ 25.

16

Next, the court addressed the denial of an instruction on inability to form specific intent. Under New Mexico law, the defense is available where the evidence establishes that a mental condition and surrounding circumstances show "the defendant was unable to form specific intent, and thus lacked 'any deliberate or premeditated design.'" *Id.*, ¶ 27. Expert testimony is not necessarily required, but it is necessary when "understanding the purported cause of a defendant's inability to form specific intent goes beyond common knowledge and experience and requires scientific or specialized knowledge." *Id.*, ¶ 28. The court stated this is especially true when the issue "involves complicated medical issues that are beyond the realm of common knowledge and experience." *Id.* ¶ 29. Although Petitioner testified about his brain injury, therapy, and symptoms, no witness "testified about how those facts show that [Petitioner] was unable to form specific intent at the time of the murder." *Id.*, ¶ 30. The court considered Petitioner's testimony insufficient to explain how his injury affected his ability to form specific intent. *Id.* The court therefore affirmed the trial court's denial of an instruction on ability to form specific intent. *Id.*

On review, the Court first finds that New Mexico's standard for entitlement to jury instructions is substantially the same as the standard announced by the Supreme Court. Under both standards, a defendant is entitled to an instruction if a "reasonable juror" or "reasonable mind" could find for the defendant given the evidence presented. *Compare Mathews*, 485 U.S. at 63 (holding a defendant is entitled to an instruction on a defense where a "reasonable jury" could find for the defendant on that theory); *with Boyett*, 2008-NMSC-030, ¶ 12 (stating a defendant is entitled to an instruction where "reasonable minds" could differ given the evidence).  The Court therefore finds that the

New Mexico courts did not apply a standard that was contrary to or an unreasonable application of federal law.

Second, although the jury was not instructed on defense of habitation and inability to form specific intent, the jury was instructed on self-defense and defense of another. (Doc. 12-2 at 33-34). Additionally, the jury was instructed on lesser-included offenses that did not include the specific intent element. If the jury believed Petitioner could not or did not form specific intent, they could have convicted Petitioner of a lesser offense that did not require specific intent. Under these circumstances, Petitioner was able to present a defense and the jury had the opportunity to consider whether Petitioner formed the specific intent. The Court therefore finds that the denial of Petitioner's requested instructions did not "by itself so infect[] the entire trial that the resulting conviction violates due process." *Cupp*, 414 U.S. at 147. Accordingly, neither the trial court's nor the New Mexico Supreme Court's decisions resulted in a decision that was contrary to or an unreasonable application of clearly established federal law as announced by the Supreme Court.

In his Reply, Petitioner maintains that his trial was fundamentally unfair because expert testimony was not presented to the jury, and expert testimony would have supported his requested jury instructions. (Doc. 23 at 2). This is a different argument than the one Petitioner has pursued so far, which is that the denial of the jury instructions, not the lack of expert testimony, denied him due process. (Doc. 1 at 8). To the extent Petitioner reargues that his counsel's ineffective assistance rendered his trial unfair, the Court has already discussed that claim. To the extent Petitioner charges that his trial was fundamentally unfair because of the lack of expert testimony, this is a new

18

argument Petitioner has not previously raised, either in state court or in his Petition,

therefore the Court will not consider it.

### III.      Conclusion

For the foregoing reasons, the Court finds that the state courts' decisions in this

case were not contrary to or unreasonable applications of clearly established federal

law, nor did they result in unreasonable determinations of fact in light of the evidence

presented. Because Petitioner has not shown that his custody violates the federal

Constitution or laws, his Motion for Release should also be denied. The Court therefore

**RECOMMENDS** that Petitioner's *Petition Under 28 U.S.C. § 2254 for Writ of Habeas*

*Corpus by a Person in State Custody* (Doc. 1), be **DENIED**; that Petitioner's *Motion for*

*Order of Release from Custody; Second Request for Appointment of Counsel*, (Doc. 19)

be **DENIED**; and that this case be **DISMISSED WITH PREJUDICE.**

---

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**

---

THE HONORABLE CARMEN E. GARZA
CHIEF UNITED STATES MAGISTRATE JUDGE